In the Matter of REALTY MANAGEMENT, INC., Appellant, against ROBERT C. WEAVER, as State Rent Administrator, Respondent, and WARREN ACKERMAN et al., Intervenors-Respondents.

In the Matter of WARREN ACKERMAN et al., Appellants, against ROBERT C. WEAVER, as State Rent Administrator, et al., Respondents.

First Department, December 18, 1958.

98

*Robert S. Fougner* of counsel (*Eugene J. Morris* and *Matthew J. Domber* with him on the brief; *McLaughlin & Fougner*, attorneys), for Realty Management, Inc., appellant.

*Murray Schwartz* of counsel (*Lewis M. Isaacs, Jr.*, with him on the brief; *M. S. & I. S. Isaacs*, attorneys), for Warren Ackerman and others, appellants.

*Jacob B. Ward* of counsel (*Nathan Heller*, attorney), for State Rent Administrator, respondent.

*Eugene J. Morris* of counsel (*Robert S. Fougner* and *Matthew J. Domber* with him on the brief; *McLaughlin & Fougner*, attorneys), for Realty Management, Inc., respondent.

VALENTE, J. Tenants of premises 50 Park Avenue, New York City, appeal from an order denying their application to vacate and annul an order of the State Rent Administrator which granted a retroactive rent increase pursuant to subdivision 5 of section 33 of the State Rent and Eviction Regulations. The landlord-applicant appeals from an order denying its petition to annul that part of the Rent Administrator's order which failed to calculate management commissions at the owner-management rate and failed to include title expenses and legal closing fees as part of the purchase price in determining the rent increase.

50 Park Avenue is a 16-story and penthouse apartment building containing 126 controlled apartments. In 1948, the owner leased the entire building to R. E. Dowling Realty Corporation (hereinafter called the " lessee ") at a fixed annual rent of $173,243, plus, as additional rent, amounts for real estate tax increases, operating expenses, and two thirds of the lessee's net income in excess of $75,000 in any six months' period. After 1951 the lessor had a right to cancel the lease on three months' notice. From June 1, 1955 the lease was cancelable by the lessee only upon payment of certain sums; after May, 1958 the lessee had the same right to cancel as the lessor. Up to the time of

the making of the order appealed from, neither party had exercised the right to cancel.*

In August, 1953 the property was sold for $1,725,000. Realty Management, Inc., the managing agent for the property, applied for a rent increase pursuant to subdivision 5 of section 33 of the Rent Regulations seeking a 6% statutory return upon the $1,725,000 purchase price of the property paid in August, 1953. The Local Rent Administrator denied relief on the ground that the lessee was not a party to the purchase, and since only the lessee would benefit by any rent adjustments, the statutory 6% net annual return must be calculated on the equalized assessed valuation of the property ($1,125,000) rather than the 1953 sales price. On that basis, the landlord-lessee's earned annual return exceeded the 6% requirement.

In an article 78 proceeding to review a denial of a protest of the Local Rent Administrator's ruling, Special Term remanded the matter to the Administrator for further consideration. (*Matter of Realty Management* v. *Weaver,* 7 Misc 2d 98.)

The commission then reopened the proceeding and recalculated the statutory net allowable return upon the basis of the $1,725,000 price paid for the property. It also held a hearing with respect to the question of the claimed decrease of essential services. On January 27, 1958 the commission granted the landlord's application and made the rent adjustments retroactive as of the date of the Local Administrator's denial of the application. The appeals we now consider are from the order of Special Term dismissing petitions to annul the determination granting the adjustments.

We find that the order of the Rent Administrator is legally insupportable.

Subdivision 5 of section 33 of the State Rent and Eviction Regulations gives the right only to a " landlord " to file an application to increase rentals. Who is the applicant for the rental adjustment which was granted here? The Administrator found that originally the application was made in the name of Realty Management, Inc., as agent — without disclosure of its principal. At other stages of the proceeding, Realty Management claimed to be the agent of the lessee, asserted it was the landlord, and suggested it was acting as agent both for the

---

* The brief of owner-landlord indicates that the lease was in fact cancelled as of June 1, 1958. As a consequence, any rent increases which were granted to the prime tenant would immediately inure directly to the benefit of the new owner, which could not, as we show hereinafter, have made an application for a rent adjustment before cancellation of the lease.

lessee-landlord and the lessor-owner of the property. While the Administrator correctly concluded that "the lessor would not be a proper party to file an application in a situation such as this", there was no basis for his assumption that the application "was made on behalf of both the lessor and the lessee although the facts show the application was filed only on behalf of the lessee." In view of the applicant's tergiversation, the necessity for such an assumption is to us significant since it gives a hint that even to the Administrator the result here appeared anomalous.

Since the lessor-owner could not file an application for an adjustment of the rents — it would not be a "landlord" as defined in subdivision 6 of section 2 of the State Residential Rent Law (L. 1946, ch. 274, as amd.) we vainly seek the basis on which the lessee, as a landlord, could do so under the circumstances of this case. The object of subdivision 5 of section 33 of the State Rent and Eviction Regulations was to afford landlords and owners of property a fair return on their investments. It was to insure persons who employ capital in the residential rent control market a return of 6% on the capital so employed. But the lessee, under a cancelable lease of an entire building for 15 years, employs no capital for which he is entitled to a return. Hence, there is no logical or statutory connection between the obligation of the lessee under his lease of the entire building and the price for which the property was sold to the subsequent purchaser.

Subdivision 5 of section 33 of the State Rent and Eviction Regulations was adopted to implement the statute. (State Residential Rent Law, § 4, subd. 4, par. [a].) The purpose was to provide for hardship increases where "The net rental income from a property yields a net annual return of less than six percent of the valuation of the property". Qualifying this intent, was the more fundamental one of preventing speculative or manipulative practices. (See *Matter of Florell Equities* v. *Weaver,* 2 A D 2d 542, affd. 2 N Y 2d 982.)

If there were a relationship in this case between the owner and the occupants of the apartments, then the value of the property would be material. Insofar as the lessee is concerned, there has been no change in its status or obligations by a sale of the property. It is not involved in any question as to a fair return which the statute and regulations afford to an owner. Its duties and rights under the net lease remain constant, unaffected by the vicissitudes of transfers of the fee. Any determination of its fair return obviously cannot be influenced by an alienation of the fee.

The effect of the ruling of the Rent Administrator herein is to ignore the existence of the lease and to treat the application as if the lessee were the owner. No compelling reason dictates such a fiction. We have found no case in which a lessee of the entire premises as circumstanced here has successfully asserted a right to obtain an increase based on a net return. The absence of any such decision is not hard to explain for the answer lies in the fact that when one purchases property on which there is a prime lease he buys it with the knowledge of what the fixed income will be for the term of the lease. Indubitably, the price paid takes into account that rental. Any speculative interest of a new owner is not a legitimate consideration to press against the rights of tenants protected by the Emergency Rent Laws. What any new owner may do cannot affect the rent relationship between the lessee of the entire premises and its tenants.

The order of the Rent Administrator must, therefore, be annulled since the statute and regulations do not, in our opinion, permit the lessee of the entire building, in this case, to obtain a hardship increase predicated upon a net annual return of 6% of the valuation of the property as shown by the price paid on a subsequent sale.

On the appeal by the tenants, the order should be reversed on the law and the determination of the Rent Administrator annulled, with costs. On the appeal by the landlord, the appeal is dismissed as academic, without costs.

BOTEIN, P. J., BREITEL, M. M. FRANK and STEVENS, JJ., concur.

Appeal [by landlord] unanimously dismissed, without costs, having become academic by virtue of the decision of this court in [tenants'] appeal, decided herewith.

Order unanimously reversed on the law and the determination of the Rent Administrator is annulled, with $20 costs and disbursements to the tenants-petitioners-appellants.